Kory A. WELCH, Plaintiff,

v.

CENTEX HOME EQUITY CO.,
L.L.C., et al., Defendants.

No. 03–2132–JWL.

United States District Court,
D. Kansas.

June 30, 2004.

1088

James E. Kiley, Jr., The Kiley Law Firm, LLC, Overland Park, KS, for Plaintiff.

Eldon J. Shields, Gates, Biles, Shields & Ryan, PA, Overland Park, KS, for Defendants and Counter Claimant.

Leo L. Logan, Coates & Logan, LLC, Overland Park, KS, William M. Modrcin, Jere D. Sellers, Stinson Morrison Hecker LLP, Jeffrey R. Siegel, Swanson Midgley, LLC, Joel B. Laner, Hazelton & Laner, Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This case arises from plaintiff Kory A. Welch's ex-husband's forgery of a note and mortgage on her home. Plaintiff brings this lawsuit against various entities and individuals who were involved with securing the note and mortgage on the home, including defendants Centex Home Equity Company, L.L.C. ("Centex"), Producers Mortgage Corporation ("Producers") and two of its loan agents, Kerstin Siley and Owen Gibson, and Nations Title Agency, Inc. ("Nations Title") and one of its escrow officers, Melissa Yarnell. The matter is presently before the court on the motions of defendants Producers, Siley, Gibson, Nations Title, and Yarnell to strike and/or dismiss plaintiff's amended complaint (docs. 151, 158, 159 & 161), as well as plaintiff's motion for leave to file a second amended complaint to correct pleading deficiencies (doc. 206). For the reasons explained below, the court will deny the motions to strike, deny plaintiff's motion to amend, grant the motions to dismiss as to plaintiff's federal law claims, and remand the remainder of this case to state court.

## I. MOTIONS TO STRIKE

As a threshold matter, the court will first address the aspect of defendants' motions in which they ask the court to strike plaintiff's First Amended Complaint (Second Correction). Although styled as motions to strike, these motions were filed within ten days after the court's order granting plaintiff leave to file her First Amended Complaint (Second Correction) and defendants are essentially asking the court to reconsider that order. The court therefore construes these motions as timely filed motions to reconsider a non-dispositive order. A motion seeking reconsideration of a non-dispositive order "shall be based on (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." D. Kan. Rule 7.3(b). Reconsideration is also appropriate where a court "has obviously misapprehended a party's position on the facts or the law." *Hammond v. City of Junction City,* 168 F.Supp.2d 1241, 1244 (D.Kan.2001). Whether to grant or deny a motion to reconsider is committed to the district court's sound discretion. *Wright ex rel. Trust Co. v. Abbott Labs., Inc.,* 259 F.3d 1226, 1235 (10th Cir.2001).

In this case, defendants' motion is not predicated on an intervening change in controlling law or the availability of new evidence. Thus, the only colorable grounds for granting the motion would be the need to correct clear error or prevent manifest injustice or if the court misapprehended defendants' positions.

There is nothing in the record from which the court can find that it misapprehended defendants' positions or that any clear error occurred. In an order dated February 20, 2004, the court granted plaintiff's motion for leave to file her First Amended Complaint (Second Correction) on the basis that defendants "communicated to the Court that they have no objection if what Plaintiff seeks to file is the First Amended Complaint—Second Corrected Version—attached as an exhibit to her second Motion (doc. 137)." Defendants do not dispute the fact that they conveyed this message to the court, and it was on this basis that the court granted plaintiff

leave to file the amended complaint. Instead, defendants contend the court should strike the complaint on the basis that it is an unauthorized pleading that deviates from the prior amendments the court allowed. The court understands that defendants may have relied on plaintiff's representation that this version of the complaint "is the exact complaint filed on October 1, 2003 ... with the exception that all references to Jay Jordan as a defendant have been deleted, the paragraphs have been renumbered, and by agreement of the parties, Household has been deleted from the Defamation Count" (doc. 137). Although the pleading may not comport with plaintiff's representation, defendants nevertheless do not dispute that they represented to the court that they did not object to plaintiff filing the First Amended Complaint (Second Correction) that was attached as an exhibit to her motion for leave to amend. Reconsideration is not warranted where the movant is simply raising new arguments that could have been presented originally. *Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991) (affirming the district court's ruling that a motion to reconsider is not warranted where the movant raises new arguments that could have been presented originally). Accordingly, the court did not commit clear error or misapprehend defendants' positions by granting plaintiff's motion to amend on the basis that it was unopposed. *Cf. Shannon v. Pac. Rail Services,* 70 F.Supp.2d 1243, 1251–52 (D.Kan. 1999) (denying motion to reconsider where court granted motion as unopposed notwithstanding party's belief that it had filed a response opposing the motion).

The court is also unpersuaded that manifest injustice will occur if the court declines to reconsider its order granting plaintiff leave to file this amended version of the complaint. The court has examined the various versions of plaintiff's proposed amended pleadings and has determined that the discrepancies between the proposed version of plaintiff's first amended complaint filed on October 1, 2003, and the First Amended Complaint (Second Correction) are relatively minor and immaterial. At this late date, the "just, speedy, and inexpensive determination of [this] action," Fed.R.Civ.P. 1, will be accomplished most readily by allowing the First Amended Complaint (Second Correction), which plaintiff has already filed, to serve as the complaint that governs this case. Accordingly, defendants' motions to strike, which the court construes as motions to reconsider, are denied.

## II. MOTION TO AMEND

▮▮▮ Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." Nonetheless, a court may refuse to grant leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir.1993). In this case, the court will deny leave to amend on the basis of undue delay (i.e., the untimeliness of the proposed amendment), undue prejudice to defendants, and failure to cure deficiencies by amendments previously allowed.

"Untimeliness in itself can be a sufficient reason to deny leave to amend, particularly when the movant provides no adequate explanation for the delay." *Panis v. Mission Hills Bank,* 60 F.3d 1486, 1495 (10th Cir.1995); *see also Frank,* 3 F.3d at 1365 ("It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend ...."). Plaintiff filed this lawsuit in state court nearly seventeen

months ago on January 29, 2003. Defendant Gibson filed his notice of removal in this court on March 10, 2003. Plaintiff did not file the current motion to amend until fourteen months later on May 15, 2004. During this fourteen-month period, the court granted in part and denied in part defendant Gibson's motion to dismiss more than a year ago on May 16, 2003. On August 8, 2003, the court convened a scheduling conference and subsequently entered a scheduling order that set an October 1, 2003, deadline for filing motions to amend the pleadings and a January 30, 2004, discovery deadline. The parties have engaged in extensive discovery and have filed numerous documents associated with the discovery process. The court granted Centex leave to file a counterclaim against plaintiff and granted plaintiff leave on three separate occasions to file amended complaints. On March 18, 2004, the court convened yet another scheduling conference to accommodate plaintiff's belated addition of defendant Yarnell and entered a revised scheduling order extending the discovery deadline to June 30, 2004, as to defendant Yarnell only. The final pretrial conference is set for July 26, 2004. Notably, the revised scheduling order did not extend the previously-set deadline for filing motions to amend the pleadings, and it did not extend the previously-set deadline for the other parties to conduct discovery. It appears, then, that the parties have largely finalized discovery and that plaintiff's motion to amend was filed more than six months after the deadline set in the scheduling order for filing motions to amend. At this belated phase of the case, plaintiff's motion to amend is untimely.

█ In addition, the court is persuaded that defendants will suffer prejudice if plaintiff is allowed to file the proposed second amended complaint. Prejudice under Rule 15 means undue difficulty in defending a lawsuit because of a change of tactics or theories on the part of the other party. *See Heslop v. UCB, Inc.,* 175 F.Supp.2d 1310, 1313 (D.Kan.2001); *Sithon Maritime Co. v. Holiday Mansion,* 177 F.R.D. 504, 508 (D.Kan.1998). As mentioned previously, the discovery deadline has passed for most of the defendants, and discovery as to defendant Yarnell should be completed within days. Thus, if plaintiff is allowed to amend her complaint, defendants will suffer prejudice by virtue of not being able to conduct discovery on plaintiff's new theories. Despite plaintiff's characterization of her proposed amendments as merely an attempt to correct pleading deficiencies, the proposed second amended complaint seeks to change a number of substantive allegations in the case. For example, the proposed complaint seeks to add a claim for fraud by silence, to add a new theory based on loan brokers' fiduciary duties, and to add an allegation that Eli Contreras and Ms. Siley were acting as agents of Nations Title as well as agents of plaintiff. These are but a few examples of the changes plaintiff seeks to make to her complaint. Suffice it to say that the proposed second amended complaint is sixty-six pages, which is more than twice the length of plaintiff's thirty-page First Amended Complaint (Second Correction). The court has reviewed the proposed second amended complaint and is satisfied that the substance of the proposed complaint is sufficiently different from that of plaintiff's First Amended Complaint (Second Correction) that defendants would suffer prejudice if the court were to allow plaintiff to file the second amended complaint at this late date.

Lastly, and perhaps most importantly under the circumstances of this case, plaintiff has repeatedly failed to cure any pleading deficiencies by amendments previously allowed. As explained previously, the court has granted plaintiff leave to amend her complaint on three different occasions.

She has offered the court no explanation why she could not have sought leave long ago to amend her complaint in the manner in which she now seeks to amend it. She does not justify this latest attempt to amend her complaint on the basis of new facts she learned during discovery. *See, e.g., Panis,* 60 F.3d at 1495 (stating the court may deny leave to amend where the party seeking the amendment knows or should have known the facts upon which the proposed amendment is based but failed to include them in the original complaint). Instead, it appears plaintiff is simply trying to improve upon the manner in which her claims are pleaded. Although this might be a perfectly laudable goal early during litigation, in this case plaintiff has already had three opportunities to amend her complaint to correct any pleading deficiencies.

In sum, the court will not allow defendants to be subjected to undue prejudice at this late date when plaintiff has had ample time and opportunities to correct any pleading deficiencies. Accordingly, the court denies plaintiff's motion for leave to file a second amended complaint. The court, then, will proceed to analyze the merits of defendants' motions to dismiss based on the allegations contained in plaintiff's First Amended Complaint (Second Correction). In doing so, the court will hereinafter refer to this version of the complaint for the sake of simplicity as, quite simply, the complaint.

## III. MOTIONS TO DISMISS

### A. Background

The following facts are taken from the allegations in plaintiff's complaint and, consistent with the well established standards for evaluating motions to dismiss, the court assumes the truth of these facts for purposes of analyzing the motions to dismiss. In June of 2001, plaintiff and her then-husband Jay Jordan were working with loan officers at Producers to refinance their home by securing first and second mortgages on the home. On or about June 14, 2001, Ms. Siley and Eli Contreras, both of whom are loan officers with Producers, came to plaintiff's residence. At that time, plaintiff and Mr. Jordan signed loan application and disclosure paperwork. These documents are referenced in plaintiff's complaint as being attached as Exhibit 1 to plaintiff's original state court petition (doc. 1).

On June 25, 2001, plaintiff left town on a business trip. On that same day, Ms. Siley and Mr. Contreras delivered the loan documents, including the notes and mortgages, to plaintiff's residence. Mr. Jordan explained to Ms. Siley that plaintiff was out of town on business and would not return until later in the week. Ms. Siley told Mr. Jordan that the documents needed to be signed right away so the loans could close by the end of the month. In front of Ms. Siley and Mr. Contreras, Mr. Jordan began to sign plaintiff's name on the documents. Ms. Siley told Mr. Jordan that she was going to leave because she could not see him sign plaintiff's name on the documents, and that she would pick up the signed documents from Mr. Jordan's office the next day.

Mr. Jordan forged plaintiff's signature on the loan documents without her prior knowledge or authorization. He failed to verify whether the loan documents contained the correct terms or whether they conformed with the loan application and disclosure documents that he and plaintiff had signed previously.

The next day, Ms. Siley went to Mr. Jordan's office and picked up the loan documents. She then delivered the documents to Mr. Gibson at Producers. Mr. Gibson falsely attested that he witnessed plaintiff and Mr. Jordan sign the documents. Ms. Siley and Producers then

transferred the loan documents to Nations Title for closing. When Nations Title closed on the loans, it failed to comply with Centex's closing instructions by not requiring Mr. Jordan and plaintiff to sign the loan documents in front of a Nations Title closing/escrow officer who verified their signatures.

Some time later, Mr. Jordan and plaintiff divorced, and plaintiff got the house in the divorce. She first noticed that something was not right with the loan in early May of 2002 when she was billed separately for her homeowner's insurance. Up until this time, she did not know that the loan application and disclosure documents that she had signed in mid-June 2001 were not the final loan documents. Her monthly payment was $97 higher than what she thought she had agreed to in the good faith estimate, and she believed that perhaps the lender had made a mistake with the interest rate or had made some other error in her loan.

She contacted Centex because she wondered why her payment was so high in the absence of an escrow payment. When she called Centex, she learned that Centex was not escrowing her taxes or homeowner's insurance. She also learned that the loans were for a twenty-year period rather than the fifteen-year period stated in the good faith estimate she had signed. Because of these discrepancies regarding what she believed were the terms of the loan, she requested copies of the loan documents from Centex. Centex initially sent her a copy of the note and, upon receipt, plaintiff realized the signature on the note was not hers. She also learned for the first time

that the terms of the loan documents did not comport with the good faith estimates she had signed insofar as the payment amount and duration of the loans were materially different from what had been represented in the good faith estimates. Confused, she again contacted Centex and this time requested copies of all of the loan documents. Centex mailed her a copy of the mortgage and settlement statement and, upon receipt, she realized that her signature had also been forged on these documents. She contacted Mr. Jordan and learned that he had forged her signature on the loan documents while she was out of town.

Plaintiff filed this lawsuit in which she asserts ten different claims against various defendants who were involved in the loan process. Her complaint asserts federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. §§ 2603 *et seq.*, and state law fraud, negligence, Kansas Consumer Protection Act ("KCPA"), civil conspiracy, declaratory judgment, quiet title, surety bond, and defamation claims.[1] Defendants Producers, Gibson, Siley, Nations Title, and Yarnell now ask the court to dismiss plaintiff's claims against them.

## B. Standard Governing a Motion to Dismiss

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his

---

1. Plaintiff also originally asserted claims against Mr. Jordan, Mr. Contreras, and Household Finance Corporation, III ("Household"), the entity to which Centex sold plaintiff's second mortgage. Plaintiff, however, voluntarily dismissed her claims against Household. She failed to timely effect service of process on Mr. Contreras, and the court declined to allow plaintiff an extension of time to serve him. Mr. Jordan notified the court that he filed a voluntary bankruptcy petition, and therefore plaintiff is prohibited from asserting any claims against him by virtue of the automatic stay provision of 11 U.S.C. § 362.

[or her] claims which would entitle him [or her] to relief," *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir.2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir.2001). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

### C. Discussion and Analysis

For the reasons explained below, the court will dismiss plaintiff's RICO claim because her complaint does not allege the predicate acts of racketeering activity with sufficient particularity and it does not allege a pattern of continuing racketeering activity. In addition, the court will dismiss plaintiff's RESPA § 2605 claim because plaintiff's complaint alleges that she was provided with the required servicing disclosures at the time she applied for the loans. The court will also dismiss plaintiff's RESPA § 2607(b) claim because plaintiff's complaint does not allege that any of the defendants shared a portion, split, or percentage of any settlement charges. The court will not resolve defendants' motions with respect to plaintiff's state law claims because, as explained in Section IV *infra*, the court declines to exercise supplemental jurisdiction over those claims.

### 1. RICO Claim

Plaintiff's complaint alleges that defendants Producers, Siley, Gibson, Nations Title, and Yarnell conspired to engage in mail fraud, wire fraud, and bank fraud in violation of RICO, 18 U.S.C. § 1962(c), (d). "To successfully state a RICO claim, a plaintiff must allege four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir.2002) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)); *accord Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir.2003). Defendants contend that plaintiff's complaint fails to allege the predicate charges of racketeering activity with sufficient particularity, and also that it fails to adequately allege a pattern of racketeering activity.[2]

The heightened pleading standard of Fed.R.Civ.P. 9(b) applies to predicate acts of fraud for a RICO claim. *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989) (explaining that this heightened pleading standard is justified by the "threat of treble damages and injury to reputation which attend RICO actions"); *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir.1992) (same). Under Rule 9(b), the circumstances constituting fraud must be pleaded with particularity. This requirement "must be read in conjunction with the principles of Rule 8, which calls for pleadings to be 'simple, concise, and direct.' " *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1997) (quoting Fed.R.Civ.P. 8).

---

**2.** It appears that plaintiff's complaint also fails to allege the enterprise element, but defendants do not raise this argument.

In order to survive a motion to dismiss, an allegation of fraud must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* (internal quotation omitted). "In other words, the plaintiff must set out the 'who, what, where, and when' of the alleged fraud." *Plastic Packaging Corp. v. Sun Chem. Corp.,* 136 F.Supp.2d 1201, 1203 (D.Kan.2001) (citations omitted).

■ Plaintiff's complaint falls far short of this standard. Her complaint generically and conclusorily alleges that defendants engaged in mail fraud, wire fraud, and bank fraud. First Amended Compl. (Second Correction) (doc. 140) ¶¶ 95–98, at 20. It provides no further explanation of how, precisely, plaintiff believes defendants engaged in mail fraud, wire fraud, or bank fraud. Based on the allegations in plaintiff's complaint, the court can surmise a litany of possible theories—Producers committed mail fraud by mailing the fraudulently obtained loan documents to Nations Bank, Nations Bank committed mail fraud by mailing the fraudulently obtained loan documents to Centex, Nations Bank committed wire fraud by transferring funds at closing based upon a fraudulently obtained loan, and all of those involved with procuring the loan committed bank fraud on Centex. Nonetheless, plaintiff's complaint contains no specific allegations to clarify the basis of the alleged predicate acts because it fails to provide even the most basic information such as whether the loan documents were mailed (as opposed to being hand delivered, sent via express courier, etc.) or whether any funds were necessarily transferred by wire. Plaintiff's memoranda in response to defendants' motions to dismiss notably acknowledges that she failed to plead the predicate racketeering charges with sufficient particularity. Given the seriousness of RICO allegations and the threat of tre-

ble damages, defendants are entitled to fair notice of the precise basis of the alleged predicate acts. Thus, the court finds that plaintiff's complaint fails to state a RICO claim because it does not allege the predicate acts of racketeering activity with sufficient particularity. *See, e.g., Farlow,* 956 F.2d at 989–90 (affirming the district court's decision that the plaintiff had failed to plead the predicate acts of fraud with sufficient particularity); *Cayman Exploration Corp.,* 873 F.2d at 1362 (same; holding the district court did not abuse its discretion by disallowing further amendments).

■ In addition, plaintiff's complaint fails to state a RICO claim because it does not allege a pattern of racketeering activity. Even if the court were to overlook plaintiff's failure to allege the predicate acts of racketeering activity with sufficient particularity, the course of events fail to satisfy RICO's "pattern" requirement. In order to satisfy this requirement, the Supreme Court has focused on two elements: (1) relationship; and (2) continuity. *SIL–FLO, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1516 (10th Cir.1990) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 238–39, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). Specifically, the plaintiff must show " 'a relationship between the predicates' and 'the threat of continuing activity.' " *Duran v. Carris,* 238 F.3d 1268, 1271 (10th Cir.2001) (quoting *H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. 2893). In this case, the alleged predicate acts of mail fraud, wire fraud, and bank fraud would arguably satisfy the relatedness element. But a showing of relatedness alone is not sufficient. *Id.* " '[I]t must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity.' " *Id.* (brackets and emphasis in original; quot-

ing *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. 2893).

█ Here, no reasonable inference can be drawn from the allegations in plaintiff's complaint that defendants' actions constituted a threat of long-term, continuing criminal activity. Plaintiff has alleged a closed-ended series of predicate acts constituting a single scheme (the forgery of plaintiff's signature) to accomplish a discrete goal (to close on the loans by the end of the month) directed at a finite group of individuals (those involved with the loan) with no potential to extend to other persons or entities. Under similar circumstances, the Tenth Circuit has held that dismissal of a plaintiff's RICO claim is proper. *See, e.g., Duran,* 238 F.3d at 1271 (affirming the district court's dismissal of plaintiff's RICO claim where the defendant engaged in a single scheme of conduct to accomplish a discrete goal directed at a finite group of individuals with no potential to extend to other persons or entities); *Boone v. Carlsbad Bancorporation, Inc.,* 972 F.2d 1545, 1556 (10th Cir.1992) (same); *see also SIL–FLO, Inc.,* 917 F.2d at 1516 (affirming the district court's grant of summary judgment under similar circumstances). This case, quite simply, does not involve "the type of long-term criminal activity envisioned by Congress when it enacted RICO." *Duran,* 238 F.3d at 1271. Thus, plaintiff's complaint fails to state a claim for a violation of RICO, and defendants' motions to dismiss are granted with respect to that claim.

### 2. RESPA § 2605 Claim

Plaintiff's complaint alleges that defendants Producers, Siley, Nations Title, and Yarnell violated RESPA by failing to provide plaintiff with the disclosures required by 12 U.S.C. § 2605. Section 2605(a) provides as follows:

Each person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of the application for the loan, whether servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding.

12 U.S.C. § 2605(a). Contrary to plaintiff's generic allegation that defendants violated § 2605, the factual allegations in plaintiff's complaint nevertheless expressly state that defendants in fact made the servicing disclosures required by RESPA § 2605. Specifically, paragraph 14 of plaintiff's complaint alleges that Ms. Siley and Mr. Contreras came to plaintiff and Mr. Jordan's residence and had them sign certain loan disclosure statements that are required by law. This paragraph references the disclosure documents attached as Exhibit 1 to plaintiff's state court petition. These disclosure documents contain two documents entitled "RESPA Servicing Disclosure[s]" that contain the loan servicing disclosures required by RESPA § 2605.

█ Plaintiff does not dispute that she received these servicing disclosures. Instead, she contends that these servicing disclosures did not satisfy the requirements of § 2605 because they did not pertain to the loans actually funded. In other words, although she received RESPA servicing disclosures for the mortgages for which she applied (i.e., the fifteen-year mortgages), she never received RESPA servicing disclosures for the mortgages she received (i.e., the twenty-year mortgages). This argument finds no support in the plain language of RESPA § 2605(a), which requires servicing disclosures to be given in conjunction with loan applications. *See* 12 U.S.C. § 2605(a) (requiring the disclosure to be given "to each person who applies for the loan, at the time of the application for the loan"). Here, plaintiff's complaint specifically alleges that she re-

ceived the servicing disclosures in conjunction with her loan applications, which is what RESPA requires. One of the expressly stated purposes of RESPA is to insure that consumers "are provided with greater and more timely information on the nature ... of the settlement process." 12 U.S.C. § 2601(a). The RESPA servicing disclosure requirement furthers this objective by requiring consumers to be informed about whether they should anticipate that their loans will be serviced by their original lenders or by subsequent loan servicers. In this case, the gist of plaintiff's complaint is not that she was taken aback with surprise by the fact that Centex kept her first mortgage and sold her second mortgage to Household. Plaintiff clearly received the servicing disclosures required by RESPA § 2605(a), even if those disclosures were disseminated in conjunction with a loan application involving different loan terms than those she allegedly ultimately received. Thus, plaintiff's complaint fails to state a claim for a violation of RESPA § 2605(a), and defendants' motions to dismiss are granted with respect to that claim.

### 3. RESPA § 2607(b) Claim

Plaintiff's complaint alleges that defendants Producers, Siley, Nations Title, and Yarnell violated RESPA, specifically 12 U.S.C. § 2607(b), by charging real estate settlement fees and expenses for services that were never actually performed in accordance with Centex's closing instructions. Section 2607(b) prohibits fee splitting in connection with mortgage loans. Specifically, it prohibits a person from "accept[ing] any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service ... other than for services actually performed." 12 U.S.C. § 2607(b). In this court's memorandum and order granting defendant Gibson's motion to dismiss

plaintiffs RESPA § 2607(b) claim against defendant Gibson, this court explained that

> [Section 2607(b) ] is an anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute. Congress intended the section to prohibit all kickback and referral fee arrangements whereby any payment is made or thing of value is furnished for the referral of real estate settlement business ... [and to prohibit] a person that renders a settlement service from giving or rebating any portion of the charge to any other person except in return for services actually performed. This reading of the section is consistent with the decisions of the Fourth, Seventh, and Eighth Circuits, which have held that the plain language of § 2607(b) requires the plaintiff to plead facts showing that the defendant illegally shared fees with a third party. This court agrees with those circuits and believes the Tenth Circuit would follow them. Therefore, the court holds that § 2607(b) prohibits only transactions in which the defendant shares a portion, split, or percentage of any charge with a third party.

*Welch v. Centex Home Equity Co.*, 262 F.Supp.2d 1263, 1269–70 (D.Kan.2003) (quotations and citations omitted; first brackets added; second brackets in original); *see also Thompson v. First Union Nat'l Bank*, No. 02–CV–215A, 2004 WL 1171738, at *1–4 (W.D.N.Y. Mar. 23, 2004) (collecting case law on this issue and reaching the same conclusion).

 In this case, plaintiff's complaint contains no allegation that any of the defendants shared a portion, split, or percentage of any settlement charge. Plaintiff contends that defendants did not perform the closing services according to Centex's closing instructions, and that § 2607(b) prohibits charging fees for ser-

vices that are not performed faithfully or accurately. Even if those allegations are true, however, § 2607(b) "prohibits only transactions in which the defendant shares a portion, split, or percentage of any charge with a third party," *Welch*, 262 F.Supp.2d at 1270, and in this case plaintiff's complaint contains no such allegation. Thus, plaintiff's complaint fails to state a claim for a violation of RESPA § 2607(b), and defendants' motions to dismiss are granted with respect to that claim.

## IV. REMAND TO STATE COURT

Given the court's dismissal of all of plaintiff's federal claims, then, the court must decide whether to exercise supplemental jurisdiction over plaintiff's remaining state law claims. Defendant Gibson filed the notice of removal in this case invoking this court's federal question jurisdiction under 28 U.S.C. § 1331. Because the court has now dismissed all of plaintiff's federal claims over which it had original jurisdiction, the court may, but is not required to, exercise jurisdiction over plaintiff's supplemental state law claims. 28 U.S.C. § 1367(c)(3). Under these circumstances, the court may exercise its discretion to remand the case to state court. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). The court's discretion must be guided by considerations of "judicial economy, convenience, fairness, and comity." *Id.* at 350, 108 S.Ct. 614; *accord Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir.1995). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon*, 484 U.S. at 350 n. 7, 108 S.Ct. 614; *see also United Mine Workers of Am. v.* *Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well."); *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir.2002) ("[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial."). In this case, plaintiff's federal claims have been eliminated more than six months before the scheduled trial date, and therefore these factors weigh in favor of the court declining to exercise supplemental jurisdiction over plaintiff's state law claims.

Nevertheless, the Tenth Circuit has admonished district courts to be mindful of the extent of litigants' efforts when deciding whether to exercise supplemental jurisdiction over a plaintiff's state law claims. *Botefuhr*, 309 F.3d at 1273 (suggesting that it may be advisable for district courts to exercise supplemental jurisdiction over state claims where the parties have already expended a great deal of time and energy on the state law claims); *Anglemyer*, 58 F.3d at 541 (same). In this case, the parties have already expended substantial time and effort on this case, and the court has also spent a good deal of time and energy managing the case and gaining familiarity with it. Thus, the court is aware of the possibility that remanding the case to state court might not be the best alternative to further the interests of judicial economy and convenience. In determining the weight to give to this consideration, the court is ultimately guided by the reasoning of an unpublished case from the Tenth Circuit, *Huntsinger v. Board of Director of E–470 Public Highway Authority*, 35 Fed.Appx. 749, 759–60, 2002 WL 853497, at *10–11 (10th Cir.2002), *cert. denied*, 537 U.S. 1029, 123 S.Ct. 557, 154

L.Ed.2d 443 (2002).[3] In *Huntsinger,* the Court held that the district court did not abuse its discretion by declining to exercise supplemental jurisdiction over state law claims where discovery had already been completed. *Id.* The plaintiff had argued that dismissal of her claims would be inefficient and wasteful because the parties would essentially be forced to duplicate their substantial efforts in state court. *Id.* The Court rejected these arguments, explaining that the parties had not completed pretrial proceedings or tried their case to a jury, and that they could utilize the discovery they had already conducted in future state court proceedings. *Id.* Likewise, in this case, although the court is concerned about judicial economy and convenience if the court remands the case after all that has transpired thus far, that concern is attenuated by the fact that the progress that has been made in the case can be transferred back to state court. Further, the Tenth Circuit has repeatedly held that district courts may properly decline to exercise supplemental jurisdiction over state law claims after dismissing federal claims on motions for summary judgment, which typically occurs at an even later stage of the litigation after discovery has been completed. *See, e.g., Lancaster v. Indep. Sch. Dist. No. 5,* 149 F.3d 1228, 1236 (10th Cir.1998) (holding the district court could decline to exercise supplemental jurisdiction over state law claims after granting summary judgment on federal law claims); *Taylor v. Meacham,* 82 F.3d 1556, 1564 n. 11 (10th Cir.1996) (same); *Figuly v. City of Douglas,* 76 F.3d 1137, 1142 (10th Cir.1996) (same); *Panis v. Mission Hills Bank,* 60 F.3d 1486, 1492 (10th Cir.1995) (same); *Anglemyer,* 58 F.3d at 541 (same).

In addition, the four factors of judicial economy, convenience, fairness, and comity usually weigh in favor of remand where "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *Carnegie–Mellon,* 484 U.S. at 350 n. 7, 108 S.Ct. 614 (internal quotation omitted). In this case, state issues overwhelmingly predominate plaintiff's remaining claims, which are based entirely on the Kansas common law and Kansas statutes. Plaintiff has raised some novel legal theories with respect to some of her state law claims, and the Kansas state courts would be the more appropriate forum to decide these issues. *See, e.g., Anglemyer,* 58 F.3d at 541 (holding the district court did not abuse its discretion by declining to exercise supplemental jurisdiction over state law claims even though discovery had been completed because the state courts are the appropriate forum to decide novel and complex issues of state law).

█ In sum, then, under these circumstances, the court is persuaded that the interests of judicial economy, convenience, fairness, and comity weigh in favor of remanding the remaining claims to state court. The court therefore declines to exercise supplemental jurisdiction over plaintiff's pendent state claims. Further, the court will decline to address the remainder of defendants' motions to dismiss insofar as those motions are directed at plaintiff's state law claims. *See, e.g., Ashley Creek Phosphate Co. v. Chevron USA, Inc.,* 315 F.3d 1245, 1264 n. 18 (10th Cir.) (holding district courts should decline to decide "dispositive motions addressed to pendent state law claims unless it appears that a federal claim will proceed to trial or a

**3.** Pursuant to Tenth Circuit Rule 36.3(B)(1), the court cites this unpublished opinion for its

persuasive value.

decision is necessary because of some peculiar aspect of the case"), *cert. denied,* —— U.S. ——, 124 S.Ct. 103, 157 L.Ed.2d 38 (2003).[4]

IT IS THEREFORE ORDERED BY THE COURT that the motions of defendants Producers, Gibson, Nations Title, and Yarnell to strike plaintiff's First Amended Complaint (Second Correction) (docs. 151, 158 & 159) are denied.

IT IS FURTHER ORDERED BY THE COURT that plaintiff's motion for leave to file a second amended complaint (doc. 206) is denied.

IT IS FURTHER ORDERED BY THE COURT that the motions of defendants Producers, Siley, Gibson, Nations Title, and Yarnell to dismiss plaintiff's First Amended Complaint (Second Correction) (docs. 151, 158, 159 & 161) are granted in part. Specifically, the motions are granted with respect to plaintiff's RICO and RESPA claims.

IT IS FURTHER ORDERED BY THE COURT that this case is remanded to the District Court of Johnson County, Kansas. The clerk shall mail a certified copy of this order to the clerk of the state court.

4. The court has considered the alternative basis of diversity jurisdiction. Plaintiff's complaint, however, alleges that plaintiff is a Kansas resident and that defendant Nations Title is a Kansas corporation. Therefore, there does not appear to be complete diversity between the parties. *See* 28 U.S.C. § 1332(c)(1) (corporation is considered to be citizen of the state in which it is incorporated and the state where it has its principal place of business for purposes of determining diversity of citizenship). In addition, none of the defendants have attempted to invoke this court's diversity jurisdiction, and the time for them to do so has now lapsed. *See id.* § 1446(b) (requiring a case to be removed on the basis of diversity jurisdiction within one year after the action is commenced); *see, e.g., Lindsey v. Dillard's, Inc.,* 306 F.3d 596 (8th Cir.2002) (holding a defendant could not overcome the district court's decision to decline to exercise supplemental jurisdiction over state claims after federal claims were dismissed because although diversity jurisdiction appeared to exist, the time for asserting diversity jurisdiction had lapsed).