**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 31 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ARTHUR DURAN,

        Plaintiff-Appellant,

v.

DEAN CARRIS; DOS GRIEGOS
CORPORATION; DOS GRIEGOS
LIMITED,

        Defendants-Appellees.

No. 00-2114

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-98-1508-JP)**

---

Submitted on the briefs:

Arthur Duran, Pro Se.

Joseph F. Canepa of Canepa, Vidal, Ahern & Hyatt, Santa Fe, New Mexico,
for Defendants-Appellees.

---

Before **BALDOCK** , **ANDERSON** , and **HENRY** , Circuit Judges.

---

**PER CURIAM** .

---

Plaintiff-appellant Arthur Duran appeals the district court's order granting defendants' motion to dismiss his second amended complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. [1]

## I.

Because, in his brief, plaintiff failed to provide this court with a complete recitation of the underlying facts of this case, the following depiction of the factual background is gleaned from the district court's order, Mr. Duran's second amended complaint, and defendants' brief. In 1995, defendants were seeking to build a subdivision on property adjacent to that owned by Mr. Duran. An easement and boundary dispute arose and defendants refused to accept a surveyor's report obtained by Mr. Duran to settle the dispute. When Mr. Duran threatened defendants with a lawsuit, defendant Dean Carris allegedly threatened to tie him up in court disputes for ten years.

At the time this dispute arose, Mr. Duran sat on the county subdivision review committee that was considering defendants' application for approval of the

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

-2-

planned subdivision.  Mr. Duran alleged that while he was still serving on this committee, Mr. Carris attempted to bribe him by offering to sell him the disputed land at a favorable price in return for his vote and influence with the committee to gain approval for the subdivision.  Mr Duran also alleged that Mr. Carris blamed him for the fact that the approval had been delayed and threatened him in order to prevent him from speaking out against the subdivision.  Mr. Duran averred that Mr. Carris, wearing dark glasses and smoking a cigar, told him that if they were in Chicago, "he wouldn't be around."  R. Vol. 1, tab 39 at 5-6.

In October 1995, Mr. Duran filed suit in New Mexico state court over the property dispute.  Defendants counterclaimed, alleging trespass because Mr. Duran was building a rock wall on land allegedly owned by defendants.  Defendants ultimately quitclaimed the disputed property to Mr. Duran and dismissed their counterclaim.

In 1997, Mr. Duran filed a second lawsuit in New Mexico state court seeking to reform his deed and to quiet title to the disputed property that was the subject of the 1995 lawsuit.  He claimed that this second lawsuit was necessary because defendants had prevented him from litigating these issues in the first lawsuit.  Again defendants counterclaimed, alleging slander of title based on Mr. Duran's *lis pendens* on the property, and for abuse of process.  In the summer of 1998, the district court granted defendants' motion for summary judgment, and

defendants dismissed their counterclaims. At the time of this appeal, Mr. Duran was in the process of appealing this state court decision.

On December 10, 1998, Mr. Duran filed his first complaint in federal district court. The complaint at issue here, his second amended complaint, was filed on October 8, 1999. In this complaint, Mr. Duran alleged that defendants' actions, by and through Mr. Carris, violated the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO), 18 U.S.C. §§ 1961-68, and a number of state laws. The district court granted defendants' motion to dismiss, concluding that Mr. Duran's second amended complaint failed to state a claim under RICO, and declining pendant jurisdiction over Mr. Duran's state law claims. In so doing, the court determined that Mr. Duran failed to establish a pattern of racketeering or that the alleged predicate acts posed a threat of continued criminal activity. The court concluded that the matter was basically "a boundary dispute and a dispute over prescriptive rights between adjoining landowners," which was settled and unlikely to occur again. R. Vol. 1, tab 51 at 8. Mr. Duran appeals.

## II.

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226,

1236 (10th Cir. 1999) (quotation omitted). The legal sufficiency of a complaint is a question of law; hence, a Rule 12(b)(6) dismissal is reviewed de novo. *Id.* In reviewing the district court's decision we accept as true all well-pleaded allegations in the complaint and construe them in favor of the nonmoving party. *Id.* "Granting defendant's motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999) (quotations omitted).

Section 1962(c) of RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." RICO defines "pattern of racketeering activity" as requiring "at least two acts of racketeering activity" within a ten-year period. *Id.* § 1961(5).

In his complaint, Mr. Duran alleges that defendants engaged in a pattern of racketeering activity including extortion and bribery. In order to satisfy RICO's pattern requirement, Mr. Duran must show two elements--"a relationship between the predicates" and "the threat of continuing activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (quotation omitted). Interpreting RICO's

legislative history, the Supreme Court stated that the pattern element is not satisfied by a showing of relatedness alone. *Id.* at 240. "[I]t must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." *Id.*

Mr. Duran has alleged two predicate acts--bribery and extortion. He claims that Carris's offer to sell him the disputed land in exchange for his favorable consideration of defendants' application for approval of the subdivision constituted bribery. He further contends that Mr. Carris committed extortion when he threatened Mr. Duran with bodily injury in order to prevent him from speaking out against the subdivision, when he threatened to tie him up in court for ten years, and when he filed counterclaims in Mr. Duran's two lawsuits.

The district court concluded, and we agree, that, even if the acts Mr. Duran alleged are related as part of a common scheme, he has failed to show that they pose a threat of continuing criminal activity. At best, what Mr. Duran alleged is "actually a closed-ended series of predicate acts constituting a single scheme . . . to accomplish a discrete goal [approval of the subdivision] directed at a finite group of individuals [Mr. Duran] 'with no potential to extend to other persons or entities.'" *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992) (*quoting Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516

(10th Cir. 1990)).  Therefore, "[t]hey do not . . . satisfy the *H.J. Inc.* test of continuity." *Id.*

We reject Mr. Duran's argument that, because, in 1995, Mr. Carris threatened to keep him involved in litigation for ten years, the threat of continued criminal activity is met.  Mr. Duran initiated all of the litigation surrounding this dispute, and it appears that, except for Mr. Duran's state court appeal of the grant of summary judgment in his last action, the litigation is complete.  At most, what Mr. Duran alleged is a property dispute which turned hostile at times.  He has not, however, alleged the type of long-term criminal activity envisioned by Congress when it enacted RICO.  Therefore, the district court's grant of defendants' motion to dismiss Mr. Duran's RICO claims in his second amended complaint was appropriate.

**III.**

Lastly, we address defendants' request for sanctions alleging that Mr. Duran's pro se brief was actually "ghost-written" by his former attorney, Harry Snow.  We issued a show cause order requesting that Mr. Duran and Mr. Snow show cause as to why this court should not sanction this behavior.  We have received and considered the parties' response.

This court is concerned with attorneys who "author[] pleadings and necessarily guide[] the course of the litigation with an unseen hand." *Johnson*

*v. Bd. of County Comm'rs*, 868 F. Supp. 1226, 1231 (D. Colo. 1994). Fed. R. Civ. P. 11(a) requires that "[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or if the party is not represented by an attorney, shall be signed by the party." Mr. Snow's actions in providing substantial legal assistance to Mr. Duran without entering an appearance in this case not only affords Mr. Duran the benefit of this court's liberal construction of pro se pleadings, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but also inappropriately shields Mr. Snow from responsibility and accountability for his actions and counsel.

As stated in a recent law review article:

> The duty of candor toward the court mandated by Model Rule 3.3 is particularly significant to ghostwritten pleadings. If neither a ghostwriting attorney nor her pro se litigant client disclose the fact that any pleadings ostensibly filed by a self-represented litigant were actually drafted by the attorney, this could itself violate the duty of candor. The practice of undisclosed ghostwriting might be particularly problematic in light of the special leniency afforded pro se pleadings in the courts. This leniency is designed to compensate for pro se litigants' lack of legal assistance. Thus, if courts mistakenly believe that the ghostwritten pleading was drafted without legal assistance, they might apply an unwarranted degree of leniency to a pleading that was actually drafted with the assistance of counsel. This situation might create confusion for the court and unfairness toward opposing parties. It is therefore likely that the failure to disclose ghostwriting assistance to courts and opposing parties amounts to a failure to "disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client," which is prohibited by Model Rule 3.3. Undisclosed ghostwriting would also likely qualify as professional misconduct under Model Rules 8.4(c) and (d), prohibiting conduct

involving a misrepresentation, and conduct that is prejudicial to the administration of justice, respectively.

John C. Rothermich, *Ethical and Procedural Implications of "Ghostwriting" for Pro Se Litigants: Toward Increased Access to Civil Justice,* 67 Fordham L. Rev. 2687, 2697 (1999) ( *citing* Model Rules of Prof'l Conduct R 3.3(a)(2)) (footnotes omitted).

It is disingenuous for Mr. Duran and Mr. Snow to argue that ghost writing represents a positive contribution such as reduced fees or pro bono representation. Either of these kinds of professional representation are analogous to the concept of rescue in the field of torts. A lawyer usually has no obligation to provide reduced fee or pro bono representation; that is a matter of conscience and professionalism. Once either kind of representation is undertaken, however, it must be undertaken competently and ethically or liability will attach to its provider.

Competence requires that a lawyer conduct a reasonable inquiry and determine that a filed pleading is not presented for an improper purpose, the positions taken are nonfrivolous, and the facts presented are well grounded. Fed. R. Civ. P. 11(b). Ethics requires that a lawyer acknowledge the giving of his advice by the signing of his name. Besides the imprimatur of professional competence such a signature carries, its absence requires us to construe matters

differently for the litigant, as we give pro se litigants liberal treatment, precisely because they do not have lawyers. *See Haines,* 404 U.S. at 520-21.

We determine that the situation as presented here constitutes a misrepresentation to this court by litigant and attorney. *See Johnson*, 868 F. Supp. at 1231-32 (strongly condemning the practice of ghost writing as in violation of Fed. R. Civ. P. 11 and ABA Model Code of Professional Responsibility DR 1-102(A)(4)). Other jurisdictions have similarly condemned the practice of ghost writing pleadings. *See, e.g., Ellis v. Maine*, 448 F.2d 1325, 1328 (1st Cir. 1971) (finding that a brief, "prepared in any substantial part by a member of the bar," must be signed by him); *Ellingson v. Monroe (In re Ellingson)*, 230 B.R. 426, 435 (Bankr. D. Mont. 1999) (finding "[g]host writing" in violation of court rules and ABA ethics); *Wesley v. Don Stein Buick, Inc.*, 987 F. Supp. 884, 885-86 (D. Kan. 1997) (expressing legal and ethical concerns regarding the ghost writing of pleadings by attorneys); *Laremont-Lopez v. Southeastern Tidewater Opportunity Ctr.*, 968 F. Supp. 1075, 1077 (E.D. Va. 1997) (finding it "improper for lawyers to draft or assist in drafting complaints or other documents submitted to the Court on behalf of litigants designated as pro se"); *United States v. Eleven Vehicles*, 966 F. Supp. 361, 367 (E.D. Pa. 1997) (finding that ghost writing by attorney for pro se litigant implicates attorney's duty of candor to the court, interferes with the court's ability to supervise the

litigation, and misrepresents the litigant's right to more liberal construction as a pro se litigant).

We recognize that, as of yet, we have not defined what kind of legal advice given by an attorney amounts to "substantial" assistance that must be disclosed to the court. Today, we provide some guidance on the matter. We hold that the participation by an attorney in drafting an appellate brief is per se substantial, and must be acknowledged by signature. [2] In fact, we agree with the New York City Bar's ethics opinion that "an attorney must refuse to provide ghostwriting assistance unless the client specifically commits herself to disclosing the attorney's assistance to the court upon filing." Rothermich, *supra* at 2712 (*citing* Committee on Prof'l and Judicial Ethics, Ass'n of the Bar of the City of New York, Formal Op. 1987-2 (1987)). We caution, however, that the mere assistance of drafting, especially before a trial court, will not totally obviate some kind of lenient treatment due a substantially pro se litigant. *See id.* at 2711-12. We hold today, however, that any ghostwriting of an otherwise pro se brief must be acknowledged by the signature of the attorney involved.

---

[2]  "[A]ttorneys must recognize that if they continue to provide assistance to an ostensibly pro se litigant throughout the course of the litigation, then disclosure of drafting assistance alone would be insufficient to satisfy their obligations to the court." Rothermich, *supra* at 2712 & n.211.

-11-

Finally, in response to this court's show cause order, Mr. Snow claimed the high ground for "representing" Mr. Duran on appeal at a reduced fee. He suggests that his representation of Mr. Duran in the trial court afforded him enough familiarity with the case to be able to offer Mr. Duran assistance with his appeal at a much reduced fee. We note the irony in Mr. Snow's rationalization that he should be commended for assisting Mr. Duran on appeal at a reduced rate and yet failing to continue that representation on appeal, or to even acknowledge that some form of assistance was given. [3] We do not allow anonymous testimony in court; nor does this circuit allow ghostwritten briefs. Therefore, we admonish Mr. Snow that this behavior will not be tolerated by this court, and future violations of this admonition will result in the possible imposition of sanctions.

The judgment of the United States District Court for the District of New Mexico is AFFIRMED.

---

[3] "It is also important to recognize the Model Rule 1.16, generally prohibiting withdrawal that would materially harm the client's interest, is of particular importance to any analysis of ghostwriting." Rothermich, *supra* at 2697.