**In re James H. WEST and Linda A. West, Debtors.**

No. 02–00223–M.

United States Bankruptcy Court, N.D. Oklahoma.

March 6, 2006.

Richard S. Shumberger, Tulsa, OK, for Plaintiff.

## MEMORANDUM OPINION

TERRENCE L. MICHAEL, Chief Judge.

*He who rejects change is the architect of decay. The only human institution which rejects progress is the cemetery.*[1]

Like virtually every other facet of American life, the practice of law has changed dramatically in the past twenty-five years. Those of us who were around the profession in 1981 remember items such as carbon paper, typewriters, rotary telephones, and use of the United States mail as a primary method of communication. Today we live in a world of word processing, instantaneous e-mail, incessant cell phones, and, in many courts, mandatory electronic filing. While the transition from paper to paperless was not without its twists and turns, it was effective, and, in most courts (including this one) is now complete. As a general rule, it is neither unusual nor improper for change to be met with some degree of opposition. The question before the Court today is how to respond when resistance to change rises to the level of intentional and active misrepresentation. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rules 7052 and 9014.

### Jurisdiction

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C.A. § 1334(b).[2] Reference to the Court of this bankruptcy case is proper pursuant to 28 U.S.C.A. § 157(a). Issues relating to the conduct of counsel are core proceedings as contemplated by 28 U.S.C.A. § 157(b)(2)(A).

### Background

Richard S. Shumberger ("Shumberger") is an attorney admitted to practice law before the United States District Court for the Northern District of Oklahoma. A review of this Court's case files reveals that Shumberger has acted as counsel in not less than 37 bankruptcy cases and/or

---

1. Harold Wilson, date unknown (from http://www.quotegarden.com/change.html).

2. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq.* (West 2006). All other references to federal statutes and rules are also to West 2006 publications.

adversary proceedings since 1998. He has not filed any new cases as counsel for a debtor since August 5, 2002,[3] nor has he appeared as counsel in an adversary proceeding since March 23, 2004.[4] As one might expect, Shumberger's appearances before this Court have substantially diminished since 2004.

On January 17, 2002, Shumberger filed a Chapter 13 bankruptcy petition on behalf of James H. West and Linda A. West ("Debtors"). Throughout the case, Shumberger acted as counsel for the Debtors. The case progressed in the ordinary manner, and a plan was confirmed on September 11, 2002.[5]

On December 1, 2003, this Court converted its docketing and record keeping system to the Case Management/Electronic Case Filing system ("CM/ECF"). Under the CM/ECF system, attorneys have the ability (upon proper training and certification) to file pleadings electronically. In order to give attorneys an opportunity to become familiar with CM/ECF, they were allowed to file pleadings in either paper or electronic format until September 1, 2004, when electronic filing became mandatory.[6] The Court and the Clerk's office entered into a massive campaign to educate counsel about the CM/ECF system, and provided extensive training in the use of the system to all attorneys who made request

for the same. The Court provided not less than five months notice of the fact that electronic filing would be mandatory as of September 1, 2004.

On May 20, 2005, after electronic filing had been mandatory in this district for over eight months, CitiCorp Trust Bank ("CitiCorp"), a creditor in this case, filed a motion for relief from the automatic stay.[7] On June 6, 2005, Shumberger filed an objection to the CitiCorp motion in paper format, as well as two separate pleadings noting changes of address.[8] Upon receipt of the paper pleadings from Shumberger, the Court issued an order to show cause regarding Shumberger's failure to file pleadings in electronic format (the "Show Cause Order").[9] The Show Cause Order contained the following provisions:

> IT IS HEREBY ORDERED that Richard S. Shumberger shall show cause, in writing and under penalty of perjury, why counsel has not complied with the requirements of the Court regarding electronic filing. Such filing, which may be in paper format, shall be submitted within 10 days of this Order.

> IT IS FURTHER ORDERED that failure to timely comply with this Order may result in the court striking the document filed by counsel, forfeiture of fees, entry of an order barring counsel from practice in this Court, or other

---

3. *See Case No. 02–03770–M.*

4. *See Adv. Proc. No. 03–0226, Docket No. 10.*

5. *See Docket No. 53.*

6. *See Miscellaneous Order No. 155.* This Court is hardly alone in making electronic filing mandatory. As of the date of this Memorandum Opinion, of the 92 bankruptcy courts in the United States, 90 had implemented the CM/ECF system. The vast majority of those courts have made electronic filing

mandatory for attorneys. Moreover, the United States District Court for the Northern District of Oklahoma also requires counsel to file pleadings in electronic format.

7. *See Docket No. 77.*

8. *See Docket Nos. 80—82.*

9. *See Docket No. 83.*

appropriate order.[10]

On June 17, 2005, Shumberger responded to the Show Cause Order, and provided the following explanation for the paper filing:

> This attorney is not currently accepting new clients in the area of bankruptcy. This Attorney also has a computer that is quite old and unreliable, and it may not be able to perform all the functions necessary for electronic filing. For these reasons this Attorney has not yet participated in the [CM/ECF] training program offered by the Court.... This Attorney has received information from the Court regarding training in the electronic system and will attempt to schedule a training session in the near future.[11]

The Court accepted this explanation, and allowed the paper filings to stand. In doing so, the Court noted its "expectation ... that all future filings by the Respondent [Shumberger] shall be made electronically in accordance with the Court's procedures." [12]

These expectations were not met. On September 12, 2005, Lonnie D. Eck ("Eck"), the Chapter 13 Trustee, moved to dismiss this case.[13] On September 27,

2005, Shumberger filed a resistance to the motion to dismiss in paper format (the "September 27 Resistance").[14] The September 27 Resistance included the following statement:

> This Attorney apologizes to the Court for filing this Objection in a paper format. *This Attorney has made a substantial effort to comply with the Court's Order, including the purchase of a new computer system, subscribing to a broadband service, and attending a training session at the Court,* but has not yet become certified in the use of the system.[15]

On September 26, 2005, Eck withdrew his motion to dismiss.[16] The Court then entered an order striking the September 27 Resistance as moot. In that Order, Shumberger was "admonished that any future pleadings filed in paper format will be stricken." [17]

Debtors continued to have difficulties in complying with the terms of their confirmed plan. On November 30, 2005, Eck filed another motion to dismiss (the "November 30 Motion").[18] On December 15, 2005, Shumberger filed a resistance to the November 30 Motion, again in paper format (the "December 15 Resistance").[19] The December 15 Resistance was virtually

---

10. *Id.*

11. *See Docket No. 85.*

12. *See Docket No. 88.*

13. *See Docket No. 95.*

14. *See Docket No. 97.*

15. *Id.*, ¶ 5 (emphasis added). The Clerk of this Court has confirmed that Shumberger attended a CM/ECF training session on September 22, 2005. At the conclusion of a training session, attorneys are given a password into the Court's training database and

certain "homework" (*i.e.*, practice filing) which must be completed in order to become a certified user of the CM/ECF system. To *this day, Shumberger has never completed* these tasks.

16. *See Docket No. 96.*

17. *See Docket No. 98.*

18. *See Docket No. 99.*

19. *See Docket No. 100.*

identical to the September 27 Resistance, including the statements regarding the purchase of a computer system. The December 15 Resistance contained no explanation of why Shumberger had not become competent in the area of electronic filing in the time period between September 27, 2005, and December 15, 2005. On December 20, 2005, the Court entered an order striking the December 15 Resistance.[20] This order was mailed to Shumberger on that same day.[21]

One day later, the Court received yet another resistance (the "December 21 Resistance") to the November 30 Motion. The December 21 Resistance was submitted in paper form, made no mention of Shumberger, and was signed by the Debtors *pro se*. It contained two paragraphs that were virtually identical to paragraphs found in the December 15 Resistance, including grammatical errors.[22] In the December 21 Resistance, Debtors also stated that they knew "that the Court is currently not accepting filings from their attorney," and sought time to obtain new counsel. Upon receipt of the December 21 Resistance, the Court set the November 30 Motion for hearing.

The hearing on the November 30 Motion was held on January 24, 2006. At that hearing, it became apparent that Shumberger had "ghostwritten" the December 21 Resistance for the benefit of the Debtors.

MR. ECK: Your Honor, if the Court would review the record the answer to I

think a previous motion to dismiss in this case on September 27 stated that the plan would be modified, and we still don't have any modification. In fact we have represented debtors filing their own response to the current motion to dismiss.

THE COURT: Mr. Shumberger, is there some reason the debtors filed their own response to this motion?

MR. SHUMBERGER: Well, Your Honor, the Court had stricken my motion because I did not file electronically. I am not currently set up or nor do I have the computer equipment or programs to file electronically on the court system. This is—

THE COURT: So you're ghostwriting pleadings for a debtor and not telling the Court and then submitting them under their signature?

MR. SHUMBERGER: No, Your Honor. I spoke with the debtors after my pleading was stricken—

THE COURT: Who typed up the objection, Mr. Shumberger?

MR. SHUMBERGER: I typed it and—

THE COURT: Who wrote it?

MR. SHUMBERGER: I—I wrote it according to the debtors' instructions, Your Honor, and the debtors are here in the courtroom today.

THE COURT: So the language, "The debtors would suffer a substantial detriment by the dismissal of the case at this

---

**20.** *See Docket Nos. 101 & 102.*

**21.** *See Docket No. 103.* Since Shumberger was not a registered user of the CM/ECF system, he did not receive electronic notice of this Order.

**22.** *See Docket No. 104.* For example, Paragraph 1 of the December 15 Resistance states that "[t]he Debtors have completed the [sic] three-quarters of the payments required by the plan." This exact sentence is found at Paragraph 2 of the December 21 Resistance.

time and some of the debts covered in the plan would accrue interest and penalties that would relate back to the filing of the Chapter 13" is language that your clients created of their own intellectual abilities; is that what you're telling me?

MR. SHUMBERGER: No, Your Honor. I did write that language.

THE COURT: Is there any part of this you didn't write? [Pause] Is there any reason I shouldn't you hold you in contempt, Mr. Shumberger, for violating the administrative practices of this court? We'll take about a five-minute recess and you can ponder the answer to that question.[23]

After the recess, more inconsistencies in Shumberger's representations to the Court came to light:

THE COURT: Good afternoon again, everyone. Please be seated. We are back on the record in Case Number 02–00223, James and Linda West, regarding the trustee's motion to dismiss. Mr. Shumberger, let me read to you from the decision—the decision of the United States Bankruptcy Court for the District of Colorado in a case entitled *In the Matter of Merriam* found at 250 Bankruptcy Reporter 724. The quote I'm going to read is found at page 733. I will tell you it is a quote that I have cited with approval in at least one unpublished decision. And I quote:

"While it is true that neither Federal Rule of Bankruptcy Procedure 9011 nor its counterpart Federal Rule of Civil Procedure 11 specifically address the situation wherein an attorney prepared pleadings for a party who will otherwise appear unrepresented in a litigation, many courts in this district and elsewhere disapprove of the practice known as ghostwriting." There's a string of cites of about six cases that I am omitting. "These opinions highlight the duties of attorneys as officers of the court to be candid and honest with the tribunal before which they appear. When an attorney has the client sign a pleading that the attorney prepared the attorney creates the impression that the client drafted the pleading. This violates both Rule 11 and the duty of honesty and candor to the court. In addition, the situation places the opposing party at an unfair disadvantage and interferes with the efficient administration of justice." Citation again omitted. "According to these decisions, ghostwriting is sanctionable under Rule 11 and as contempt of court."

And I will tell you in my unpublished decision I went on to say, "The Court finds the analysis set forth above to be sound. The practice of ghostwriting will not be tolerated in cases before this Judge." Your response, sir.

MR. SHUMBERGER: Your Honor, this case was filed over four years ago when the court did not have the electronic filing—

THE COURT: So the rules don't apply to you; is that what you're telling me?

MR. SHUMBERGER: Your Honor, I'm just stating the point that this was a rule that came into effect long after I filed this case and I have not filed a single case since those rules came into effect. When the pleading was stricken I was panicked. I called the trustee's office.

**23.** *Transcript of Proceedings Held on January 24, 2006, Docket No. 110,* (hereafter "Tran- script"), Page 3, Line 1 through Page 4, Line 13.

They told me they had already filed a request for an order dismissing. I did not want this case to reach an unjust result. I was simply attempting to represent the best interests of my client and I made a mistake in doing so.

THE COURT: By—by violating a ruling of this Court directing you to comply with the same procedures that every attorney in this room complies with and by in fact attempting to do indirectly what you had been ordered not to do directly. Is that a fair statement?

MR. SHUMBERGER: I believe that's fair, Your Honor. I—Your Honor, *I simply don't have the money to buy the computer equipment and the programs necessary to comply with the Court's order.*[24]

The Court went on to question Mr. Shumberger regarding his prior inconsistent statements regarding his purchase of computer equipment:

THE COURT: Mr. Shumberger,—Mr. Shumberger, in the pleading that you filed in paper format last September, I'm going to quote that pleading. I'm going back to the filing issue.

"This attorney apologizes to the Court for filing this objection in paper format. This attorney has made a sub-

stantial effort to comply with the Court's order, including the purchase of a new computer system, subscribing to a broadband service, and attending a training session of the court, but has not yet become certified in the use of the system."

That strikes me as somewhat inconsistent with your statements today that you can't afford to do it. Now did you buy it? I mean which is it?

MR. SHUMBERGER: I have a computer system, Your Honor. I do not have the software.[25]

The Court has great difficulty with the assertion that Shumberger cannot file pleadings electronically due to a lack of software. It is apparent that Shumberger has a computer with a word processing capacity: all of the responses, including the response signed by the Debtors *pro se,* were prepared on a computer using word processing software.[26] If one has a computer with word processing capability and internet access, the only software necessary to electronically file pleadings using the CM/ECF system is a program which will convert the document from the word processing format to an Adobe Acrobat.pdf document. Such software can be obtained at little or no cost.[27]

At the conclusion of the hearing, the Court dismissed this bankruptcy case as a

24. *Id.,* Page 4, Line 19 through Page 6, Line 23 (emphasis added).

25. *Id.,* Page 78, Line 21 through Page 8, Line 10.

26. An examination of those pleadings reveals that they are printed using an ink jet or laser printer, with the text neatly placed in fully justified margins. These are earmarks of a word processing program; an ordinary typewriter cannot fully justify text.

27. For example, a .pdf writer is available at www.docudesk.com/deskPDF_Profession-

al_Edition.shtml at a price of $27.99. Another website offers a .pdf writer for the cost of $14.95. *See* www.pdf-file.com. At http://site4.pdf995.com/download.html, one can obtain a .pdf writer *at no charge.* That writer automatically places the company logo for ".pdf995" on each document created. If one wants a .pdf writer from this site which does not include the advertising, the cost is a mere $9.95. The Court was able to locate these resources on the internet in a matter of moments. Given the existence of this software, coupled with its cost, the Court cannot accept Shumberger's representations that he

result of Debtors' default in payments under the plan. The Court retained jurisdiction to address the conduct of Shumberger. The Court specifically informed Shumberger that the Court was considering an award of sanctions under Bankruptcy Rule 9011, holding Shumberger in civil contempt, and referring Shumberger to the Disciplinary Counsel of the United States District Court for the Northern District of Oklahoma to consider whether Shumberger's conduct warranted additional disciplinary action. The Court invited Shumberger to file a pleading regarding his conduct, and granted him 14 days to do so. Shumberger has filed nothing to further explain or justify his actions.

### Discussion

Shumberger's behavior in this case is a classic example of how improper action builds upon itself. It is a lesson in misconduct in the aggregate. If one were to isolate each of Shumberger's transgressions, they might appear minor in nature. One could question why the Court would devote so much time and energy to policing them. However, when the conduct of Shumberger is examined *in toto*, the gravity of the matter becomes apparent. The record establishes that Shumberger:

1. has failed to abide by the procedures of this Court by filing pleadings in paper format;

2. has ghostwritten pleadings for the Debtors in order to avoid compliance with those procedures and to avoid the consequences for such non-compliance;

3. has, through the ghostwriting process, attempted to deceive the Court into believing that pleadings which he authored were in fact written by the Debtors; and

4. has made grossly inconsistent statements to the Court regarding his reasons for failure to abide by the Court's procedures.

When these statements are viewed as a whole, the conclusion that at least some of the statements were made with the intent to deceive or at least with a reckless disregard for their truthfulness is inescapable. While this Court is ordinarily loath to sanction counsel, something has to be done here. To tolerate the conduct is to condone it and set a standard for practice far below what should be allowed.

### Violation of the Administrative Procedures

Under the terms of this Court's Miscellaneous Orders Nos. 144 and 155 and the Bankr.N.D. Okla. Administrative Procedures for Filing, Signing and Verifying Pleadings and Papers by Electronic Means (the "Administrative Procedures"), all attorneys who practice before this Court are required to submit all papers and pleadings in electronic form using the Court's CM/ECF system. The mandatory aspect of CM/ECF is rooted in both convenience and practicality. Electronic filing allows access to the Court 24 hours a day, 7 days a week. The system allows counsel to file documents anytime, from virtually anywhere. It also allows them instantaneous access to court files and immediate notification of activity in their cases. The reaction to CM/ECF (and the mandatory electronic filing requirement) has been overwhelmingly positive. From a practical standpoint, the submission of pleadings in electronic form has streamlined certain administrative practices of the Clerk's office, a necessity in these times of budgetary strain. At this point in

did not file electronically because he could not afford the necessary software.

time, the bankruptcy court simply does not have the resources to operate two filing systems: one paper, one electronic.

When an attorney files a pleading in paper format, it is the practice of the Court to issue an order to show cause and allow counsel to explain why they did not comply with the Administrative Procedures, and why the pleading which they filed should not be stricken. Upon receipt of the response, the Court reviews the matter. In the vast majority of cases, the offending pleading is allowed to stand, and counsel are informed in no uncertain terms that any future paper filings will be stricken.[28]

This is how the Court dealt with Shumberger. His first paper filing was accepted, and he was informed that future paper pleadings would be stricken. When Shumberger ignored the Court's orders and continued to file paper pleadings, the Court ordered the pleadings stricken. The Court will continue to strike any pleadings submitted by Shumberger in paper format. No further sanction is necessary in this regard. If all Shumberger had done was continue to file pleadings in paper format, the matter would have ended with the striking of those pleadings.

### Ghostwriting

 The practice of "ghostwriting" pleadings by attorneys is one which has been met with universal disfavor in the federal courts.

The requirements of Fed.R.Bankr P. 9011 follow those of Fed.R.Civ.P. 11 applicable in federal civil litigation. The required signature is a certification that, according to the best of the signer's knowledge, information and belief, formed after reasonable inquiry, the pleading is not being presented for an improper purpose, its legal contentions are warranted by existing law and the factual allegations have evidentiary support. Fed.R.Bankr.P. 9011(b); Fed. R.Civ.P. 11(b). The signature determines who is responsible for the accuracy of the allegations in the pleading. In some cases, the signature also determines the standard to be applied in determining the allegations in the pleading. Pleadings prepared by lay persons without counsel (pro se pleadings) are interpreted more liberally than those prepared by counsel. For example, claims asserted by a pro se party cannot be dismissed for legal insufficiency unless it appears that the claimant can prove no set of facts which would entitle the claimant to relief. Pro se pleadings are also granted a degree of indulgence under Fed.R.Civ.P. 11 not extended to those drafted by attorneys.

While it is true that neither Fed. R.Bankr.P. 9011, nor its counterpart Fed.R.Civ.P. 11, specifically address the situation where an attorney prepares pleadings for a party who will otherwise appear unrepresented in the litigation, many courts in this district, and elsewhere, disapprove of the practice known as ghostwriting. These opinions highlight the duties of attorneys, as officers of the court, to be candid and honest with the tribunal before which they appear. When an attorney has the client sign a pleading that the attorney prepared, the attorney creates the impres-

---

**28.** The Court is only aware of one situation where it allowed counsel to continue to submit paper pleadings. In that case, counsel had a vision impairment which he stated made it impossible for him to use a computer. In that case, the Court allowed paper submissions until the medical condition was corrected.

sion that the client drafted the pleading. This violates both Rule 11 and the duty of honesty and candor to the court. In addition, the situation "places the opposing party at an unfair disadvantage" and "interferes with the efficient administration of justice." According to these decisions, ghostwriting is sanctionable under Rule 11 and as contempt of court.[29]

The United States Court of Appeals for the Tenth Circuit has condemned the practice of ghostwriting when it comes to the submission of appellate briefs.[30] In that case, the court went so far as to hold that "an attorney must refuse to provide ghostwriting assistance unless the client specifically commits herself to disclosing the attorney's assistance to the court upon filing."[31] This Court has been able to find no authority which condones the practice of ghostwriting by counsel.

In the present case, Shumberger filed the December 15 Resistance, which was stricken because it was submitted in paper format. Upon receiving notice that the December 15 Resistance had been stricken, Shumberger wrote the December 21 Resistance, and then had the Debtors sign it as their own handiwork. When questioned in open court, Shumberger told the Court that, after his pleading had been stricken as being filed in violation of the Administrative Procedures and the prior orders of the Court, he wrote the December 21 Resistance "according to the Debtors' instructions."[32] A comparison of the December 21 Resistance with prior responses authored by Shumberger reveals that the December 21 Resistance is identical to the prior responses in many respects. When the Court asked Shumberger, "Is there any part of this [the December 21 Resistance] you didn't write?,"[33] he stood silent. The conclusion is inescapable that Shumberger wrote the December 21 Resistance and had the Debtors sign it in order to avoid the requirement that counsel who practice in this Court file their pleadings electronically.

### Statements Made With the Intent to Deceive the Court

■ "An attorney has a duty of absolute candor to the Court."[34] That duty is embodied in the oath that the attorney takes as a condition of being admitted to practice before the United States District Court for the Northern District of Oklahoma,[35] as well as the disciplinary rules adopted by the State of Oklahoma.[36] Historically, vio-

---

**29.** *In re Merriam,* 250 B.R. 724, 733 (Bankr. D.Colo.2000) (citations omitted).

**30.** *See Duran v. Carris,* 238 F.3d 1268, 1271–1273 (10th Cir.2001).

**31.** *Id.* at 1273 (*citing* Committee on Prof'l and Judicial Ethics, Ass'n of the Bar of the City of New York, Formal Op.1987–2 (1987)).

**32.** *Transcript,* Page 3, Lines 22 and 23.

**33.** *Id.,* Page 4, Lines 8 and 9. The Court has listened to the audio transcript and confirmed that Shumberger was provided with an opportunity to answer that question.

**34.** *Thompson v. Haynes,* 36 F.Supp.2d 936, 939 (N.D.Okla.1999).

**35.** *See, e.g.,* N.D. Okla. LR 83.4 (Oath of Attorney) ("I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the Judge or jury by any artifice or false statement of fact or law."); *see also Simon v. Ford Motor Co.,* 165 F.R.D. 650, 656 (N.D.Okla.1995).

**36.** *See, e.g.,* Rule 3.3(a)(1), Oklahoma Rules of Professional Conduct, Okla Stat. Ann. tit. 5, Ch. 1, App. 3–A (West 2001) ("A lawyer shall not knowingly make a false statement of fact or law to a tribunal"); Rule 8.4(c), Oklahoma Rules of Professional Conduct, Okla Stat. Ann. tit. 5, Ch. 1, App. 3–A (West 2001) ("It is professional misconduct for a lawyer to en-

lations of this duty have not been taken lightly.[37]

■ Shumberger has made the following statements to the Court:

1. In the September 27 Resistance and the December 15 Resistance, Shumberger stated that he "has made a substantial effort to comply with the Court's Order, including the purchase of a new computer system, subscribing to a broadband service, and attending a training session at the Court."[38] However, in open court on January 24, 2006, Shumberger stated that he is "not currently set up or nor [does he] have the computer equipment or programs to file electronically on the court system."[39]

2. On January 24, 2006, when confronted with his prior statements that he had purchased a computer system to allow him to file electronically, Shumberger admitted that while he does have the necessary computer equipment, he did not have and could not afford the necessary software to file documents electronically.

3. On January 24, 2006, Shumberger initially claimed that he did not author the December 21 Resistance, but merely served as a typist at the direction of the Debtors. When pressed by the Court, Shumberger admitted that he did in fact author the December 21 Resistance, and failed to disclose that he had authored the December 21 Resistance because he was aware of the Court's prior rulings that any pleading he filed in paper format would be stricken.

It is impossible for all of these statements to be true. Shumberger either has the computer equipment necessary to allow him to file electronically or he does not. The Court concludes that he does. With respect to Shumberger's statement that he could not afford the necessary software to allow him to file electronically, such software is readily available at little or no cost. Given the inconsistencies in Shumberger's other statements, it is difficult to find this statement credible. Finally, Shumberger either authored the December 21 Resistance or he did not. The Court concludes that he did. The Court also concludes that Shumberger intended to deceive the Court into believing that the December 21 Resistance was not his work.

■ For whatever reason, Shumberger has decided that he cannot or will not file pleadings in electronic form. That is his choice, and the Court will respect it. What Shumberger may not do is circumvent the rules requiring electronic pleading or engage in any manner of subterfuge or deceit in order to file pleadings in paper format. The Court finds that Shumberger has violated Bankruptcy Rule 9011 as well

gage in conduct involving dishonesty, fraud, deceit or misrepresentation.'").

37. *See, e.g., State ex. rel. Oklahoma Bar Ass'n v. Johnston*, 863 P.2d 1136 (Okla.1993) (four month suspension from practice of law for, in part, false statements made to a trial judge); *State ex. rel. Oklahoma Bar v. Todd*, 833 P.2d 260 (Okla.1992) (six month suspension for failure to inform trial judge that amount at issue had been paid prior to attorney seeking a default judgment for said amount).

38. *See* September 27 Resistance, *Docket No. 97*, December 15 Resistance, *Docket No. 100*.

39. *Transcript*, Page 3, Lines 10 through 12.

as his duty of candor to the Court. Accordingly, the Court will assess a monetary sanction against Shumberger in the amount of $1,000.00, to be paid within fifteen (15) days. The Court believes such a severe sanction is warranted by Shumberger's conduct. In addition, the Court will send a copy of this Memorandum Opinion and the accompanying Judgment to the Disciplinary Committee of the United States District Court for the Northern District of Oklahoma for whatever further action that committee may deem appropriate.

A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

### JUDGMENT

THIS MATTER comes before the Court for consideration of the conduct of Richard S. Shumberger. The issues having been duly considered and a decision having been duly rendered, for the reasons set forth in the Memorandum Opinion filed concurrently herewith,

IT IS HEREBY ORDERED that sanctions are imposed against Richard S. Shumberger in the amount of One Thousand Dollars ($1,000.00).

IT IS FURTHER ORDERED that said sanctions shall be paid to the Clerk of this Court on or before March 21, 2006.

IT IS FURTHER ORDERED that a copy of this Judgment and the Memorandum Opinion filed concurrently herewith shall be delivered to the Disciplinary Committee of the United States District Court for the Northern District of Oklahoma for whatever further action that committee may deem appropriate.