FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 17, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

TROY BROOKS,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 22-3005
(D.C. No. 6:20-CV-01370-SAC)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **ROSSMAN**, Circuit Judges.
_____

Troy Brooks appeals pro se from a district court order affirming the Commissioner's denial of his applications for disability insurance and supplemental security income benefits. Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.     **Background**

Mr. Brooks filed an application in October 2010, alleging he was disabled

beginning in November 2008 when he was 20 years old.  An administrative law judge

(ALJ) denied his application in July 2012.  Following a remand by the district court

and two remands by the Appeals Council, an ALJ again denied Mr. Brooks'

application in December 2019.

Although Mr. Brooks had worked since the alleged onset date of his disability,

the ALJ found that his reported earnings did not rise to the level of substantial

gainful activity (SGA) for any year since that date.  The ALJ found that Mr. Brooks

has three medically determinable mental impairments that qualify as severe:

attention deficit hyperactivity disorder, depression, and learning disorder/dyslexia.

The ALJ also considered his non-severe impairments, including post-traumatic stress

disorder, mild asthma, and sleep disorder.

> According to the ALJ, Mr. Brooks has the residual functional capacity (RFC)
>
> to perform a full range of work at all exertional levels but with the
> following non-exertional limitations:  limited to simple, routine repetitive
> tasks that are limited to low stressors such as, slow-paced work, do not
> require multi-tasking; any have [sic] changes in tasks performed or
> locations of work; would work better in jobs that require non-verbal skills;
> and is limited to occasional interaction with co-workers, supervisors, and
> with the general public.

R., Vol. 1 at 736.  As relevant to this appeal, in determining Mr. Brooks' RFC, the

ALJ considered the medical opinions in the record, including a recent opinion by

Dr. Thomas Bartlett, a psychological consultative examiner.  The ALJ afforded

Dr. Bartlett's opinion "some weight," *id.* at 743, and incorporated into Mr. Brooks'

RFC some, but not all, of the limitations in the doctor's opinion. A vocational expert (VE) testified that an individual with Mr. Brooks' RFC would be able to perform unskilled occupations such as kitchen helper, industrial cleaner, and lab equipment cleaner. Considering Mr. Brooks' age, education, work experience, and RFC, the ALJ concluded he had not been under a disability from the alleged onset date through the date of the ALJ's decision.

After the Appeals Council rejected Mr. Brooks' exceptions to the ALJ's decision, he sought review in the district court, raising a single claim of error: that the ALJ failed to resolve inconsistencies between the limitations in Dr. Bartlett's opinion and the mental RFC determination. More specifically, Mr. Brooks argued the ALJ insufficiently explained why he rejected marked and moderate limitations found by Dr. Bartlett.

The district court held that the ALJ had incorporated in the RFC Dr. Bartlett's moderate mental limitations by restricting Mr. Brooks to simple work that is routine and repetitive, involves limited stressors, is slow-paced, does not require multi-tasking, and involves few changes in tasks performed or work location. The court further held the ALJ otherwise provided a sufficient explanation for giving only some weight to Dr. Bartlett's opinion. In particular, the ALJ had sufficiently explained his rejection of a marked limitation in Mr. Brooks' ability to respond appropriately to usual work conditions and to changes in a routine work setting. The district court therefore affirmed the Commissioner's decision.

3

## II.    Discussion

### A.    Standards of Review

"We review the Commissioner's decision to determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Ultimately, the ALJ is entitled to resolve evidentiary conflicts, and this court cannot reweigh the evidence. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that "we may not displace the agency's choice between two fairly conflicting views" (brackets and internal quotations marks omitted)).

Although Mr. Brooks was represented by counsel throughout the administrative proceedings in this case and in the district court, he proceeds pro se in this appeal.[1] We therefore liberally construe his appellate briefs. *See Cummings v.*

---

[1] Mr. Brooks represents that he has not written his own briefs. Rather, he has relied on "pro bono help of family members, professionals from multiple areas and other concerned individuals who have worked with [him]" because "his advocates have not been able to find an attorney" to represent him in this appeal. Aplt. Opening Br. at 1. Based on these representations, it does not appear that any attorney has participated in the drafting of Mr. Brooks' briefs. However, we caution that "any ghostwriting of an otherwise pro se brief must be acknowledged by the signature of the attorney involved." *Duran v. Carris*, 238 F.3d 1268, 1273 (10th Cir. 2001).

4

*Evans*, 161 F.3d 610, 613 (10th Cir. 1998).  "[B]ut we will not act as his advocate."

*James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

### B.    Scope of Review

"The scope of our review . . . is limited to the issues the claimant properly

preserves in the district court and adequately presents on appeal[.]"  *Berna v. Chater*,

101 F.3d 631, 632 (10th Cir. 1996).  We will not address an issue the appellant failed

to raise in the district court unless he argues for plain-error review on appeal.

*See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011).  These

waiver principles apply despite Mr. Brooks' pro se status on appeal.  *See United*

*States v. Edwards*, 69 F.3d 419, 427 n.5 (10th Cir. 1995) (declining to address issue

raised in a pro se supplemental brief in part because it was not raised in the district

court).

On appeal, Mr. Brooks asserts numerous claims of error in the ALJ's decision.

He argues the ALJ failed to correct errors the district court identified in remanding

his case to the agency after the first ALJ decision in 2012, did not meaningfully

consider all of the evidence in determining his RFC, made unreasonable inferences

about the nature and extent of his part-time work, ignored VE testimony that

supported his claim, and undervalued the entirety of the opinion evidence in the

record.  He also contends the ALJ's RFC determination is not supported by

substantial evidence.

As noted, however, Mr. Brooks chose to raise only one claim of error in the

district court, challenging the sufficiency of the ALJ's explanation of the weight

assigned to Dr. Bartlett's opinion. *See* R., Vol. 2 at 28 (district court's assessment that "plaintiff's sole challenge on appeal is with the ALJ's consideration of the consultative medical opinion of Dr. Bartlett"). Mr. Brooks argues our scope of review should nonetheless include his other contentions because his "RFC is the crucial issue in this case." Aplt. Reply Br. at 7. But because he does not argue for plain-error review of his forfeited issues, we limit our review to his arguments related to the ALJ's assessment of Dr. Bartlett's opinion that we conclude he has adequately presented based upon our liberal construction of his opening appeal brief.

### C.    Merits

"It is the ALJ's duty to give consideration to all the medical opinions in the record . . . [and to] discuss the weight he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161. "[T]he ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) and give good reasons for the weight he assigns to the opinion." *Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015).[2] An ALJ may not, without explanation, adopt some of the restrictions in a medical opinion while rejecting others. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

Although an ALJ must "adequately evaluate and discuss the medical-source evidence," we will find his explanation is sufficient if we "can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied." *Keyes-Zachary*, 695 F.3d at 1166. "The more

---

[2] New agency rules for evaluating medical opinions, effective as of March 27, 2017, do not apply to Mr. Brooks' disability claim, which was filed in 2010.

comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection" and we "exercise common sense." *Id.*

### 1.    Dr. Bartlett's Opinion

Dr. Bartlett performed a psychological consultative examination of Mr. Brooks in October 2019.  The doctor completed a form on which he checked boxes indicating his assessment of Mr. Brooks' mental restrictions, which included moderate, marked, and extreme limitations.[3]  As relevant to this appeal, Dr. Bartlett stated that Mr. Brooks has a marked limitation in responding appropriately to usual work situations and to changes in a routine work setting.  Dr. Bartlett indicated this opinion was based upon Mr. Brooks' "negative attitude and poor social skills."  R., Vol. 1 at 1640.  In the narrative portion of his opinion, Dr. Bartlett stated the following:

> Mr. Brooks can complete simple instructions.  He would not [b]e a good candidate for interacting with the public due to his irritability.  Coworkers and supervisors might struggle with his irritable and negative attitude. . . . His depression is likely to interfere with his ability to perform in a consistent and ongoing manner in a full-time occupational setting.

*Id.* at 1644.

---

[3] There is no dispute that the ALJ incorporated Dr. Bartlett's extreme limitations related to complex instructions and work-related decisions into Mr. Brooks' RFC by limiting him to simple, routine, repetitive tasks.  And Mr. Brooks does not repeat on appeal the argument he raised in the district court that the ALJ failed to explain why his RFC omits the moderate limitations in Dr. Bartlett's opinion.  As noted, the district court found that the RFC included those limitations.

**2.      The ALJ's Assessment of Dr. Bartlett's Opinion**

The ALJ described Dr. Bartlett's report regarding his 2019 psychological

consultative examination of Mr. Brooks as follows:

> Consistent with the claimant's report of a depressed mood, Dr. Bartlett
> reported the claimant came across as depressed and irritable, impatient and
> annoyed.  Dr. Bartlett reported the claimant exhibited marginal eye contact
> and social skills, but that they were not inappropriate.  H[e] reported the
> claimant exhibited difficulty with two tasks that demanded mental control.
> In addition, . . . his general cognitive ability, as estimated by the WAIS-IV,
> was in the borderline range (FSIQ=72).  His general verbal comprehension
> abilities were in the borderline range (VCI=76), and his general perceptual
> reasoning abilities continued to be in the low average range (PRI=73).
> Based on his examination and review, Dr. Bartlett diagnosed the claimant
> with ADHD predominantly inattentive presentation and persistent
> depressive disorder with anxious distress.  Notably, Dr. Bartlett reported
> the claimant displayed a wide variety of behaviors, but reported he had only
> been treated with Zoloft and one other pill for about two years.  He also
> reported activities of daily living including the ability to drive, to perform
> basic computer skills, to use a cell phone and social media, to manage his
> own finances, and to perform all personal care tasks independently.  In
> addition, he reported helping to care for his two year old daughter.  He also
> reported hobbies and interests including playing basketball, watching his
> daughter, and writing music.  Moreover, he reported working in a barber
> shop averaging about forty-hours per month.

R., Vol. 1 at 739-40 (citations and internal quotation marks omitted).

The ALJ concluded that the clinical findings in the record, including

Dr. Bartlett's, supported some mental limitations, but that the level of Mr. Brooks'

treatment did not suggest that he has disabling limitations.  In particular, Mr. Brooks

had not been prescribed ADHD medication, had not required inpatient care because

of a mental health crisis, and had not regularly exhibited significant symptoms such

as panic attacks, suicidal ideations with plan, or psychosis.  The ALJ stated that

"[o]ne would expect objective abnormalities in at least some of these areas if the

claimant were truly experiencing disabling anxiety or panic." *Id.* at 740.  The ALJ elsewhere concluded that "the record also reveals that the treatment has been generally successful in controlling [Mr. Brooks'] symptoms," noting that "he testified that his medications help with depression and anxiety." *Id.* at 738.

The ALJ also concluded that Mr. Brooks' descriptions of his daily activities were "not limited to the extent one would expect to associate with disabling mental impairments." *Id.* at 737.  The ALJ noted that Mr. Brooks can independently perform personal care tasks, cook simple meals, shop, drive, do laundry, perform household repairs, iron, and mow the yard.  He also helped to care for his two-year-old daughter.  In addition, Mr. Brooks had completed barber school, which required 1500 hours of course work.  Although he initially could not pass the written licensing tests, with tutoring and accommodations he passed the examinations with high scores, according to a CDI Report.[4]  Mr. Brooks had also maintained his barber license during all but two years since 2013, and he worked part-time as a barber approximately five hours per day, five days per week.

In considering the medical opinion evidence, the ALJ assessed Dr. Bartlett's opinion as follows:

> Based on his evaluation and review of the record, Dr. Bartlett opined the claimant had moderate limitations in understanding, remembering, carrying out, and making simple judgment on simple instructions.  He further opined

---

[4] "The Cooperative Disability Investigations (CDI) program is a key anti-fraud initiative that combats fraud within Social Security disability programs."  Off. of the Inspector Gen., Soc. Sec. Admin., *Cooperative Disability Investigations*, https://oig.ssa.gov/cdi/ (last visited Mar. 7, 2023).

the claimant had marked limitations[5] in these areas for complex instructions and work-related decisions. He also opined the claimant had mostly moderate limitations in his ability to interact with others, but that he had marked limitations in his ability to respond appropriately to usual work situations and to changes in routine. Dr. Bartlett's opinion is afforded some weight. The undersigned notes that Dr. Bartlett['s] opinion that the claimant can complete simple instructions is generally consistent with the objective evidence of record, including Dr. Bartlett's own evaluation and test results, which indicate the claimant is generally functioning in the borderline range. His opinion, and the test results, are also consistent with the claimant's ability to perform a range of daily activities independently. However, his marked limitation in responding to usual work situations and to changes in work settings is not completely supported by the record. For example, he based some of his limitations due to a "negative attitude", not clinical findings and also indicated that the testing may not have been fully reliable. While there are reports by the claimant's employer through Dr. Suderman's observations[6] that the claimant is routinely late for work and has had some clients not return due to poor haircuts, the fact remains that the claimant continues to work as a barber for approximately five hours per day, five days per week. Moreover, the CDI Investigative report shows that the claimant has been able to maintain his license, and perform skilled artistic [hair] designs.

Id. at 743-44 (citations omitted).

---

[5] Dr. Bartlett opined that Mr. Brooks had extreme, rather than marked, limitations in these areas. But as noted, there is no dispute that Mr. Brooks' RFC accounted for Dr. Bartlett's extreme limitations with regard to complex work.

[6] Mr. Brooks had been assessed and counseled at Dyslexia and Learning Differences Center by Linn Suderman and Robert Suderman. The ALJ gave little weight to the Sudermans' opinions, which found that Mr. Brooks had moderate, marked, and extreme limitations in certain areas. The ALJ found the marked and extreme limitations were not supported by the testing Mr. Brooks underwent, his continued work activity, and his activities of daily living. The ALJ added, "Notably, these opinions are primarily based on observations and inquiries to third parties, including the claimant's parents and employer, who are not acceptable medical sources." R., Vol. 1 at 742. The weight the ALJ assigned to the Sudermans' opinions is not within the scope of this appeal.

Thus, the ALJ provided the following reasons for giving only some weight to Dr. Bartlett's opinion and for rejecting the doctor's marked limitation on Mr. Brooks' ability to respond appropriately to usual work situations and to changes in the work setting:

- Although Dr. Bartlett's clinical findings supported some mental limitations, the level of treatment Mr. Brooks underwent was not suggestive of him having disabling limitations.
- Mr. Brooks' range of daily activities were not consistent with disabling limitations.
- Dr. Bartlett based some of his findings on Mr. Brooks' negative attitude rather than clinical findings and indicated that his testing may not have been fully reliable.
- Although there was evidence that Mr. Brooks was routinely late for work at his barbershop job and some clients reported he had given poor haircuts, he continued to work as a barber for approximately five hours per day, five days per week, he has been able to maintain his barber license, and he can perform skilled artistic hair designs.

### 3.     Mr. Brooks' Contentions

### a.     Unclear Rationale

Mr. Brooks contends the ALJ's reasons for giving Dr. Bartlett's opinion only some weight were so unclear that the district court instead had to provide a rationale. He points to the district court's statements that the ALJ's decision "can be read" to explain why the ALJ adopted some of Dr. Bartlett's restrictions and rejected others. R., Vol. 2 at 25-26. It is true that "[j]udicial review is limited to the reasons stated in the ALJ's decision" and that a court may not "suppl[y] possible reasons for rejecting a physician's opinion." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). Be we are not persuaded that the ALJ's decision lacks reasoning or that the district court supplied a post hoc rationale. The ALJ cited several reasons for rejecting

11

Dr. Bartlett's marked limitation in responding to usual work situations and to changes in work settings, and we, like the district court, can follow his reasoning in conducting our review. *See Keyes-Zachary*, 695 F.3d at 1166. This is not a case where the ALJ failed to explain how he weighed a medical opinion. *Cf. Haga*, 482 F.3d at 1208.

### b. Negative Attitude and Marginal Effort in Testing

The ALJ gave Dr. Bartlett's opinion only some weight, in part, because he concluded the doctor had based some of his findings on Mr. Brooks' negative attitude rather than clinical findings, and because the doctor questioned the accuracy of his testing on the ground that Mr. Brooks "does not appear to take the testing seriously and his effort is marginal." R., Vol. 1 at 1643. Mr. Brooks argues the evidence shows he is unable to control his negative attitude, which "*is the key reason* he has never been able to keep a real job." Aplt. Opening Br. at 6. He asserts that his "recurrent 'negative attitude' and 'marginal effort'—whatever their cause may be—is at the heart of why he is not able and has not been able to do full-time work." *Id.* at 11.

These assertions, which are not accompanied by citations to the medical record, do not undermine the ALJ's stated reasons. To the extent Mr. Brooks bases these contentions on his own or his family's assessment of his work-related limitations, the ALJ considered his "assertions related to his inability to function due to mental deficits," but the ALJ did not give them great weight "because the medical record does not support his allegations." R., Vol. 1 at 741. The ALJ also considered

12

his family members' testimony, found it was "merely cumulative of the claimant's reports," and gave it only "some weight . . . for the same reasons the claimant's reports are found only somewhat consistent with the record." *Id.* at 744. These findings by the ALJ are not within the scope of this appeal.

### c.    Part-time Employment as a Barber

While acknowledging his employer's report that Mr. Brooks is routinely late for work and sometimes provides poor haircuts, the ALJ rejected Dr. Bartlett's marked limitation on Mr. Brooks' ability to respond appropriately to usual work situations and to changes in the work setting, in part, based upon his continued work as a barber for approximately five hours per day, five days per week and his ability to maintain his barber license and perform skilled artistic haircut designs. Elsewhere in the decision, the ALJ also noted that Mr. Brooks was able to complete barber school, which required 1500 hours of course work. Mr. Brooks challenges the ALJ's reliance on his part-time work as a barber because he has done this work under special circumstances where his employer is a family friend and his father pays some or all of the rent for his barber chair. He also asserts that his barber job is intended to provide him with "therapeutic socialization." Aplt. Opening Br. at 5 (internal quotation marks omitted). As the ALJ acknowledged, Mr. Brooks states that he has not maintained a predictable work schedule at his barber job.

To the extent Mr. Brooks argues his part-time work as a barber is irrelevant to the ALJ's assessment of Dr. Bartlett's opinion because it does not qualify as SGA, he is mistaken. The regulations provide that, "[e]ven if the work you have done was not

13

substantial gainful activity, it may show that you are able to do more work than you actually did." 20 C.F.R. §§ 404.1571 and 416.971. Mr. Brooks nonetheless argues his part-time work as a barber fails to demonstrate his ability to sustain full-time unskilled work. But the ALJ could conclude that Mr. Brooks' ability to work part-time in a skilled job requiring significant interaction with his supervisor and the public, albeit with punctuality issues and some performance problems, was *part of the evidence* showing that he can do more work than he actually did if he were restricted to a simple, repetitive, slow-paced, low-stress job that does not require multi-tasking and involves only occasional social interaction.

### d.     Unchallenged Reasons

The ALJ also found that Mr. Brooks' level of treatment and his activities of daily living were not consistent with disabling limitations. Mr. Brooks does not acknowledge either of these reasons for rejecting Dr. Bartlett's marked limitation on his ability to respond appropriately to usual work situations and to changes in the work setting—a limitation he says would have resulted in a finding of disability. Thus, to the extent Mr. Brooks argues the ALJ's rejection of that limitation lacks a substantial-evidence basis, he fails to argue or demonstrate that these two unchallenged reasons do not satisfy that standard.

As Mr. Brooks recognizes, the record contains conflicting evidence regarding the extent of his work-related limitations. *See* Aplt. Opening Br. at 1 (stating "the experts who have evaluated him give contradictory causes and assessments of his condition"). "The ALJ was entitled to resolve such evidentiary conflicts and did so."

14

*Allman*, 813 F.3d at 1333.  The ALJ appropriately gave Dr. Bartlett's opinion only some weight.  "Concluding otherwise would require us to reweigh the evidence, a task we may not perform."  *Id.*

## III.  Conclusion

We affirm the district court's judgment.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

15